UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MCINTOSH LAND COMPANY
LIMITED PARTNERSHIP,

        Plaintiff,

v.                                                                    Case No.  8:03-cv-1734-T-24 TGW

FAIRFIELD FLETCHER LIMITED
PARTNERSHIP, ET AL.,

        Defendants.

_____/

## **ORDER**

This cause comes before the Court on Defendants' Motion for Summary Judgment (Doc. No. 143) and Plaintiff's Motion for Leave to Supplement its Opposition to Defendant's Motion for Summary Judgment (Doc. No. 173).  These motions are opposed (Doc. No. 175, 186).  The Court held a hearing on these motions on October 14, 2005.

## **I.  Plaintiff's Motion for Leave to Supplement**

Plaintiff moves for leave to supplement its response to Defendants' motion for summary judgment after the discovery motions pending before the magistrate judge are ruled upon and any additional discovery is completed.  (Doc. No. 173).  Defendants oppose this motion.  (Doc. No. 186).

Plaintiff argues that since there are pending motions to compel that have not yet been ruled on, this Court should not rule on the pending motion for summary judgment.  However, since the filing of this motion, the magistrate judge has ruled on all of the outstanding discovery motions.  (Doc.  No. 218).

Defendant argues that the motion to supplement should be denied, because Plaintiff has

not complied with Federal Rule of Civil Procedure 56(f).  Rule 56 (f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Plaintiff has not identified the evidence that it wants to supplement its response to the motion for summary judgment with or how such evidence will impact the motion for summary judgment, and as such, the Court finds that the motion to supplement should be denied.

## II.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all of Plaintiff's claims.  (Doc. No. 143).  Plaintiff opposes this motion.  (Doc. No. 175).

### A.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).

**B.  The Parties**

Plaintiff filed suit against fifteen defendants regarding a piece of property ("the Property") that Plaintiff purchased.  The following is a brief description of the defendants[1]:

- The following defendants are collectively referred to as "Seller and its Affiliated Companies":

  - Fairfield Fletcher Limited Partnership ("Seller") is the seller of the Property.  The Seller was a single asset entity that owned the Property and had no employees. (Jones depo[2], p. 12, 25).

  - Fairfield Properties, Limited Partnership ("FF Properties, LP") is the property

---

[1]Plaintiff sued CNK Architects, Inc. ("CNK") and Robert G. Wilson in the Third Amended Complaint.  However, Plaintiff stated at the hearing that it was abandoning its claims against CNK and Wilson, and as such, the Court grants summary judgment in favor of CNK and Wilson on all claims asserted against them.  (Doc. No. 175, p.2, n.5).

[2](Doc. No. 177, Ex. 2)

manager.  (Jones depo, p. 22).

- Fairfield Development L.P. ("FF Development") is the general contractor for the construction on the Property.  (Jones depo, p. 22).

- Fairfield Realty, LLC ("FF Realty")

- Fairfield Financial, LLC ("FF Financial") is the general partner of the Seller.  (Doc. No. 177, Ex. 8, Exhibit A to Limited Partnership Agreement).

- Fairfield Properties, Inc.  ("FF Properties, Inc.")

- Fairfield Residential, LLC ("FF Residential") is a holding company that owns several Fairfield companies.  (Jones depo, p. 7, 25; Doc. No. 177, Ex. 21).

- The following defendants are limited partners of the Seller and are collectively referred to as "Limited Partner Defendants" (Doc. No. 177, Ex. 8, Exhibit A to Limited Partnership Agreement):

  - Citicorp North America, Inc. ("Citicorp")

  - Granite Management Associates, LLC ("Granite")

  - Tambourine Properties, Inc. ("Tambourine")

- The following defendants are collectively referred to as "Individual Defendants":

  - Glenn D. Jones ("Jones") is the vice president of several entities within the Fairfield organization.  (Doc. No. 198, Jones affidavit, ¶ 2).

  - Terry Turk ("Turk") is the vice president of FF Properties, LP.  (Doc. No. 198, Turk affidavit, ¶ 2).

  - Christopher E. Hashioka ("Hashioka") is one of the two founders of the Fairfield organization.  (Doc.  No. 198, Hashioka affidavit, ¶ 2).  He is an officer of every

4

Fairfield entity.  (Hashioka depo, p. 7).

## C. Background

According to the allegations in the Third Amended Complaint (Doc. No. 69), in August of 2001, Plaintiff purchased a certain parcel of improved real estate consisting of a 392-unit apartment complex located in Temple Terrace, Florida ("the Property") from Defendant Fairfield Fletcher Limited Partnership ("Seller") for $26,750,000.  The Purchase and Sale Agreement[3] ("the Agreement") states that "[t]o the best of Seller's knowledge, there are no existing violations of any laws, building codes or other codes, ordinances or statutes affecting the use, occupancy and enjoyment of the Land and the Improvements as an apartment complex." Additionally, the Agreement provides that this representation survives for a period of two years after the closing date.

The Agreement gave Plaintiff the right to inspect the Property and contained the following clause:

> Condition of Property.  Purchaser acknowledges that Purchaser will have independently and personally inspected the physical condition of the Property and that Purchaser has entered into this Agreement based on its ability to make such examination and inspection. EXCEPT AS SET FORTH IN THIS AGREEMENT, PURCHASER ACKNOWLEDGES THAT PURCHASER IS PURCHASING THE LAND, IMPROVEMENTS AND PERSONALITY IN "AS-IS, WHERE IS" CONDITION "WITH ALL FAULTS" AS OF THE CLOSING AND SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS OR GUARANTEES, EITHER EXPRESS OR IMPLIED EXCEPT AS TO REPRESENTATIONS AND WARRANTIES OF SELLER . . . SET FORTH IN THIS AGREEMENT . . ., AS TO (I) THE LAND'S IMPROVEMENTS' AND PERSONALTY'S PHYSICAL CONDITION . . . OR (II) THE STRUCTURAL INTEGRITY OF THE IMPROVEMENTS. PURCHASER SHALL, AT ITS SOLE COST AND EXPENSE, CONDUCT AND RELY EXCLUSIVELY UPON ITS OWN INDEPENDENT

---

[3]Doc. No. 69, Ex. 13.

INVESTIGATION IN THE EVALUATION OF THE LAND,
IMPROVEMENTS AND PERSONALTY.

Prior to the purchase, Plaintiff conducted on-site inspections of the Property.  However, prior to Plaintiff's on-site inspection of  the Property, Plaintiff contends that Defendants took steps to cover up and conceal all material defects in and around the Property that would be visible or likely to be discovered during Plaintiff's inspections.  Plaintiff contends that after purchasing the Property, it determined that there were substantial and material violations of the Florida Building Code that were not disclosed and that were not reasonably observable by Plaintiff during its inspection due to the willful actions of Defendants to conceal the true condition of the Property.

After the sale of the Property, Seller disbursed all or a substantial portion of the proceeds from the sale of the Property, rendering the Seller insolvent.  Thereafter, the Seller went through a legal dissolution and was terminated as a lawfully registered business entity.

Plaintiff asserts the following claims: (1) fraud in the inducement; (2) breach of contract by Seller; (3) violation of Florida Building Codes; (4) common law fraudulent conveyance and/or Uniform Fraudulent Transfer Act; and (5) constructive trust.[4]  Defendants have moved for summary judgment on all counts.

## D.  Analysis

Defendants move for summary judgment on all of Plaintiff's claims.  As such, the Court will analyze each count.

---

[4]Since Plaintiff is abandoning its claims against CNK and the Court has granted summary judgment in CNK's favor, the Court will not address the claims of architect's negligence (Count IV) and breach of contract involving CNK (Count V) that Plaintiff asserts against CNK in the Third Amended Complaint.  (Doc. No. 175, p. 2, n.5).

### 1.  Florida Building Code (Count III)

Plaintiff asserts a claim for violations of Florida's Building Code, pursuant to Florida

Statute § 553.84, against Seller and its Affiliated Companies.   Section 553.84 provides:

> [A]ny person or party . . . damaged as a result of a violation of this part or the
> Florida Building Code, has a cause of action . . . against the person or party who
> committed the violation; however, if the person or party obtains the required
> building permits and any local government or public agency with authority to
> enforce the Florida Building Code approves the plans, if the construction project
> passes all required inspections under the code, and if there is no personal injury or
> damage to property other than the property that is the subject of the permits,
> plans, and inspections, this section does not apply unless the person or party knew
> or should have known that the violation existed.

Defendants argue that they are entitled to summary judgment on this claim, because (1)

there is no evidence that violations of the 1994 building code existed on the date of the sale; (2)

the only defendant that could be held liable for building code violations is FF Development (the

general contractor for construction of the Property); and (3) even if building code violations

existed, Defendants cannot be held liable due to the exculpatory language of the statute.

Accordingly, the Court will address each argument.

### a.  Evidence of Violations

Defendants argue that they are entitled to summary judgment on this claim, because there

is no evidence that violations of the 1994 building code existed on the date of the sale.  However,

the Court finds that a genuine issue of material fact exists as to whether building code violations

existed on the date of sale.  As such, the Court denies Defendants' motion on this issue.

### b.  Who Can Be Held Liable

Defendants argue that §553.84 only provides a cause of action against the person or party

who commits the building code violation, and as such, the only defendant that could be held

liable for building code violations is FF Development, who is the general contractor for construction of the Property.  Plaintiff responds that since the other defendants knew about the code violations, they can also be held liable.  To support this argument, Plaintiff quotes a portion of § 553.84 and argues that liability can be imposed on any "person or party [who] knew or should have known that the violation existed."  Plaintiff, however, misreads the statute.

The portion of the statute regarding a "person or party [who] knew or should have known that the violation existed," is not an additional basis for imposing liability.  Instead, this part of the statute is an exception to the exception contained in the statute.  Specifically, the statute contains an exception from liability for a person or party who commits a code violation if building permits were acquired, the construction plans were approved by the relevant government agency, and the project passed the required code inspection, ***unless the person or party who committed the code violation*** "knew or should have known that the violation existed." As such, Plaintiff has not shown that any defendant other than FF Development can be held liable under §553.84 for any code violations.  Therefore, the Court grants summary judgment in favor of all of the defendants other than FF Development on this claim.

### c.  Exculpatory Language of the Statute

Defendants argue that FF Development is entitled to summary judgment because it meets the exception contained in the statute, specifically, that building permits were acquired, the construction plans were approved by the relevant government agency, the project passed the required code inspection, and FF Development did not know nor should it have known that a violation existed.  The court, however, finds that a genuine issue of material fact exists as to whether FF Development knew or should have known that a violation existed.  Accordingly, the

Court denies Defendants' motion on this issue.

### 2.  Fraud in the Inducement (Count I)

Plaintiff asserts a fraud in the inducement claim against the Seller and its Affiliated Companies, Jones, Hashioka, and Turk based on its contention that these defendants made misrepresentations or omissions regarding the following: (1) that the Property conformed to the "as built" plans (a term of art used to describe plans drafted by an architect describing the actual final construction of the property[5]), (2) that Jones and Turk made a reasonable investigation into whether there were any building code violations and that there were none, and (3) the existence of concealed latent construction defects.  In order to succeed on a claim for fraud in the inducement, Plaintiff must show: (1) that Defendants misrepresented a material fact; (2) that Defendants knew or should have known of the statement's falsity; (3) that Defendants intended that the representation would induce Plaintiff to rely and act on it; and (4) that Plaintiff suffered injury in justifiable reliance on the representation.  See Hillcrest Pacific Corp. v. Yamamura, 727 So. 2d 1053, 1055 (Fla. 4th DCA 1999).

Defendants move for summary judgment on Plaintiff's fraud in the inducement claim, arguing that (1) Plaintiff's reliance that the plans were "as built" plans was not justified, (2) Plaintiff's fraud claim based on building code violations is barred by the economic loss rule, (3) the contract disclaims all warranties other than those expressly provided in the contract, and (4) Plaintiff cannot submit evidence to support this claim.  Accordingly, the Court will address each argument.

---

[5](Doc. No. 69, p. 11, ¶ 30)

**a.  Reliance on "As Built" Plans**

Defendants argue that Plaintiff cannot succeed on its fraudulent inducement claim to the extent that it is based on the allegation that these defendants misrepresented that the Property conformed to the "as built" plans, since it was clear that the plans were not designated "as built." Specifically, Defendants argue that "as built" plans are created after the construction is finished[6], and the plans at issue in this case are dated May 19, 1997, more than two years <u>before</u> the construction was completed[7].  (Doc. No. 69, Ex. 5)  As such, Defendants argue that there was no reason for Plaintiff to believe that the plans were "as built" plans and that the Property conformed as such.  Accordingly, Defendants argue that since Plaintiff cannot show that its reliance on the assertion that the plans were "as built" plans was justified, Plaintiff's claim based on the "as built" plans fails.  <u>See</u> <u>Taylor Woodrow Homes of Florida, Inc. v. 4/46-A Corp.</u>, 850 So. 2d 536, 542 (Fla. 5th DCA 2003)(stating that "[r]eliance on the alleged false statement is an essential element and if the evidence shows that the recipient of the statement knew it was false reliance on the statement is unjustified").

The Court agrees with Defendants that Plaintiff's reliance on the plans as being "as built" plans was not justified.  Accordingly, the Court grants summary judgment on this claim to the extent that it is based on the alleged misrepresentation that Plaintiff was given "as built" plans and that the Property conformed as such.

---

[6]Likewise, in the Third Amended Complaint, Plaintiff describes "as built" plans as plans describing the actual final physical construction of the property.  (Doc. No. 69, p. 1, ¶ 30).

[7]Construction was completed in 1999.

10

**b.  Economic Loss Rule**

Next, Defendants argue that Plaintiff's fraudulent inducement claim based on building code violations is barred by the economic loss rule, which bars tort claims that are so intertwined with the performance of a contract that the allegations do not rise to the level of an independent tort.  Thus, Defendants argue that since the Agreement contains a provision stating that there are no known violations of the building code, Plaintiff's fraudulent inducement claim based on building code violations must fail.

The Court rejects this argument.  "The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action.  Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract."  HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1997)(citations omitted).  "Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract.  See id.

Plaintiff contends that the representation that based on investigation and inquiry there were no known building code violations caused Plaintiff to enter into the Agreement to purchase the Property.  Since this allegation of fraud occurred in the form of an alleged misrepresentation that caused Plaintiff to enter into the transaction, such fraud is fraud in the inducement and survives as an independent tort.  See Allen v. Stephan Co., 784 So. 2d 456, 457 (Fla. 4th DCA 2000).

The economic loss rule bars claims based on fraud in the performance of a contract; it does not bar claims based on fraud in a term of a bargain.  See id. at 458.  The representation that

based on investigation and inquiry there were no known building code violations was a term of

the Agreement that induced Plaintiff to enter into the transaction.  Nothing further was required

of Defendants in connection with this contract term after the Agreement was signed by the

parties, and as such, the economic loss rule does not bar Plaintiff's fraudulent inducement claim

based on this assertion.  See id. (finding that the economic loss rule did not bar the plaintiffs'

fraudulent inducement claim based on the defendants' failure to accurately disclose the tax

liabilities of the company that the plaintiffs purchased from the defendants); D & M Jupiter, Inc.

v. Friedopfer, 853 So. 2d 485, 488 (Fla. 4th DCA 2003)(finding that the economic loss rule did

not bar the plaintiffs' fraudulent inducement claim based on the defendant's assertion that the

property that the plaintiffs bought from the defendant had proper drainage).

### c.  Disclaimer of Warranties

Next, Defendants argue that they are entitled to summary judgment on this claim,

because the alleged oral misrepresentations are adequately covered or expressly contradicted in

the Agreement.  Specifically, Defendants point out that the Agreement disclaims all warranties

and representations other than those expressly provided in the contract.  The Agreement

provides:

> EXCEPT AS SET FORTH IN THIS AGREEMENT, PURCHASER
> ACKNOWLEDGES THAT PURCHASER IS PURCHASING THE LAND,
> IMPROVEMENTS AND PERSONALITY IN "AS-IS, WHERE IS"
> CONDITION "WITH ALL FAULTS" AS OF THE CLOSING AND
> SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES,
> REPRESENTATIONS OR GUARANTEES, EITHER EXPRESS OR IMPLIED
> EXCEPT AS TO REPRESENTATIONS AND WARRANTIES OF SELLER . . .
> SET FORTH IN THIS AGREEMENT . . . , AS TO (I) THE LAND'S
> IMPROVEMENTS' AND PERSONALTY'S PHYSICAL CONDITION . . . OR
> (II) THE STRUCTURAL INTEGRITY OF THE IMPROVEMENTS.
> PURCHASER SHALL, AT ITS SOLE COST AND EXPENSE, CONDUCT
> AND RELY EXCLUSIVELY UPON ITS OWN INDEPENDENT

INVESTIGATION IN THE EVALUATION OF THE LAND,
IMPROVEMENTS AND PERSONALTY.

Furthermore, the Agreement sets forth certain warranties, including the warranty that to the best

of Seller's knowledge, there are no existing building code violations, and the Agreement defines

"Seller's knowledge" to mean "the current actual knowledge of [Glenn Jones] or Terry Turk,

with investigation and inquiry."  (Doc. No. 69, Ex. 13, p.8, 10, 24).

The Court agrees with Plaintiff that such warranty can form the basis for its fraudulent

inducement claim, since there is a genuine issue of material fact as to whether there was actually

an investigation and inquiry into whether there were building code violations.  Specifically, Turk

stated in her deposition that she did not make an investigation into whether they were any

building code violations that occurred during construction on the Property.  (Doc. No 177, Turk

depo, p. 31).  As such, construing the evidence in the light most favorable to Plaintiff, Seller's

assertion in the Agreement that to the best of Seller's knowledge, there were no existing building

code violations was a misrepresentation, since Turk did not make an investigation.[8]

The Court notes, however, that there were no warranties given in the Agreement with

respect to the plans describing the Property.  Therefore, to the extent that Plaintiff argues that the

plans did not match the final construction of the Property, the Court agrees with Defendants that

such cannot form the basis of a fraudulent inducement claim, since the Agreement disclaims all

warranties and representations other than those set forth in the Agreement.

### d.  Evidence Supporting Plaintiff's Claim

Defendants argue that Plaintiff cannot submit evidence to support its fraudulent

---

[8]It is unclear whether Jones made an investigation.

inducement claim.  The Court has already found that this claim cannot be based on the fact that the Property did not conform to the plans and that the plans were not "as built" plans.  However, the Court has found that this claim may be based on the representation that based on investigation and inquiry, there were no known building code violations, since an investigation was not made.  Furthermore, the Court agrees with Plaintiff that its fraudulent inducement claim may be based on concealed latent construction defects, because there is a genuine issue of material fact as to whether certain defendants engaged in active concealment of latent construction defects.

The Court notes that "an intentional nondisclosure of known facts materially affecting the value of commercial property is not actionable under Florida law."  See Wasser v. Sasoni, 652 So. 2d 411, 412 (Fla. 3d DCA 1995)(citations omitted); see also Haskell Co. v. Lane Co., Ltd., 612 So. 2d 669, 671 (Fla. 1st DCA 1993)(stating that "[m]ere nondisclosure of a material fact, unaccompanied by words or acts sufficient to constitute active concealment, is not actionable"). As such, the  doctrine of caveat emptor, or "buyer beware," applies to the purchase of commercial property.  Wasser, 652 So. 2d at 412.  However, there are exceptions to this rule, such as when there has been active concealment of material facts and the truth could not be discovered by the exercise of ordinary diligence.   See id. at 412-13; Green Acres, Inc. v. First Union National Bank of Fla., 637 So. 2d 363, 364 (Fla. 4th DCA 1994); Ramel v. Chasebrook Construction Co., 135 So. 2d 876, 882 (Fla. 2d DCA 1961); Thibault v. Transact Realty & Investment, 709 So. 2d 593, 595 (Fla. 5th DCA 1998)(Thompson, J., dissenting).

Plaintiff argues that Defendants actively concealed latent construction defects and that Plaintiff could not have discovered the true condition of the Property through the exercise of

ordinary diligence.[9]   Upon review, the Court finds that Plaintiff's fraudulent inducement claim based on the alleged active concealment of latent construction defects should remain.

Thus, Plaintiff's fraudulent inducement claim remains to the extent that it is based on (1) Seller's alleged misrepresentation that based on investigation and inquiry there were no known building code violations, and (2) the existence of actively concealed latent construction defects. However, Plaintiff has not shown that it can assert this claim against all of the defendants that it has asserted this claim against.  Specifically, Plaintiff has failed to show how several of the Fairfield entities were involved in the allegedly fraudulent conduct.  Instead, the Court finds that the only Fairfield entities that Plaintiff can pursue this claim against are the Seller, FF Properties, LP, and FF Development.  Additionally, this claim remains against Jones, Hashioka, and Turk.

### 3.  Breach of Contract By Seller (Count II)

Plaintiff asserts a breach of contract claim against the Seller for violations of the building code.  Specifically, the Agreement states that "[t]o the best of Seller's knowledge, there are no existing violations of any laws, building codes or other codes, ordinances or statutes affecting the use, occupancy and enjoyment of the Land and the Improvements as an apartment complex." (Doc. No. 69, Ex. 13, p.8).  The Agreement defines "Seller's knowledge" to mean "the current actual knowledge of [Glenn Jones] or Terry Turk, with investigation and inquiry."  (Doc. No. 69, Ex. 13, p.10, 24).

The Seller moves for summary judgment on this claim, because Turk and Jones did not have actual knowledge of any code violations.  For the reasons stated below, the Court agrees

---

[9]Plaintiff points out that two inspections of the Property were conducted that did not reveal the allegedly concealed construction defects.  (Doc. No. 177, Ex. 65, 66).

that summary judgment is warranted on this claim.

Terry Turk is a vice president of FF Properties LP, an entity that served as the property manager for the Property.  (Doc. No. 198, Turk affidavit, ¶ 2).  Turk's office is located in Texas. (Doc. No. 198, Turk affidavit, ¶ 2).  It is undisputed that Turk had no actual knowledge of any building code violations that occurred during construction on the Property.  (Doc. No 177, Turk depo, p. 31).

Glenn Jones is an accountant, and he serves as vice president of the Seller.  (Doc. No. 198, Jones affidavit, ¶ 2).  His office is also located in Texas, and he has no construction background at all.  (Doc. No. 198, Jones affidavit, ¶ 2; Jones depo, p. 94).  Jones stated in his affidavit that he had no actual knowledge of any existing building code violations.  (Doc. No. 198, Jones affidavit, ¶ 4).

Thus, it is undisputed that Turk and Jones had no knowledge of any building code violations.  However, to the extent that Plaintiff bases this claim on the fact that Turk and Jones failed to make an investigation and inquiry into whether there were any building code violations, the Court finds that such conduct cannot form the basis of a breach of contract claim, as it is better suited as a basis for Plaintiff's fraudulent inducement claim (since it relates to a term of the Agreement that caused Plaintiff to enter into the transaction, rather than a term to be *performed* under the Agreement).  Therefore, the Court grants summary judgment on this claim.

## 4.  Fraudulent Conveyance (Count VI)

In the Third Amended Complaint, Plaintiff asserts a common law fraudulent conveyance claim and/or a claim under the Uniform Fraudulent Transfer Act (Chapter 726 of the Florida Statutes) arising out of the Seller's disbursement of all, or substantially all, of the proceeds from

the sale of the Property.  Plaintiff asserts this claim against the Seller and its Affiliated Companies, the Limited Partner Defendants, Jones, and Hashioka.  Plaintiff stated at the hearing that it is proceeding only under the Uniform Fraudulent Transfer Act.  As such, the Court grants summary judgment to the extent that Plaintiff asserted a common law fraudulent conveyance claim in the Third Amended Complaint.

Defendants argue that they are entitled to summary judgment on this claim, because (1) this claim is derivative of Plaintiff's other claims, (2) Hashioka and Jones did not receive any proceeds from the Seller, (3) there is no evidence of bad faith on the part of the Limited Partner Defendants, and (4) Plaintiff's damages are limited to the amounts actually received by each defendant.  Accordingly, the Court will address each argument.

### a.  Derivative Claim

Defendants argue that they are entitled to summary judgment on this claim, because this claim is derivative of Plaintiff's other claims against the Seller, and as such, Plaintiff cannot pursue this claim if the Court grants summary judgment on all of the other claims asserted against the Seller.  This is because in order to assert liability under the Uniform Fraudulent Transfer Act arising from an alleged fraudulent transfer, the creditor (Plaintiff) must have an underlying right to payment from the transferor (the Seller).  See Florida Statute § 726.105(1), § 726.102(3), (4), (6).  As such, Defendants argue that since Plaintiff has no viable claim against the Seller in Counts I, II, and III, Plaintiff's derivative claim against all of the defendants fails.

The Court rejects this argument.  While Plaintiff does not have a viable claim against the Seller in Count II (breach of contract) or Count III (building code violations), Plaintiff's fraudulent inducement claim against the Seller remains (Count I).

### b.  Hashioka and Jones

Next, Defendants argue that Hashioka and Jones are entitled to summary judgment on this claim, because they did not receive any proceeds from the Seller.  Defendants are correct that under the Uniform Fraudulent Transfers Act, Plaintiff can only state a claim against a person or entity that received a transfer from the Seller.  See Freeman v. First Union National Bank, 865 So. 2d 1272, 1275 (Fla. 2004).

At the hearing, Plaintiff conceded that Jones did not receive any proceeds from the Seller. As such, the Court grants summary judgment in favor of Jones on this claim.

Additionally, Plaintiff argued at the hearing that Hashioka received proceeds indirectly from the Seller due to his ownership of the Fairfield entities.  However, Plaintiff failed to cite any case law to support its argument that such indirect receipt of proceeds is sufficient.  As such, the Court grants summary judgment in favor of Hashioka on this claim.

### c.  Limited Partner Defendants

Next, Defendants argue that the Limited Partner Defendants are entitled to summary judgment on Plaintiff's Uniform Fraudulent Transfers Act claim, because there is no evidence of bad faith on their part.  Defendants base their argument on the good faith exception contained in the Uniform Fraudulent Transfers Act, which provides that a transfer is not voidable "against a person who took in good faith and for a reasonably equivalent value."  Fla. Stat. § 726.109(1). Plaintiff responds that the Limited Partner Defendants knew about the Seller's financial problems relating to the Property prior to the sale of the Property.  However, it appears that after the Property was sold, the Seller's existing financial problems were eliminated.  Therefore, it is unclear what the relevance is of the Limited Partner Defendants' knowledge of the Seller's prior

financial problems.

Plaintiff also argues that since there was a two-year period for Plaintiff to assert claims related to the purchase of the Property, bad faith can be inferred from the fact that the Limited Partner Defendants took the proceeds of the sale prior to the expiration of the two-year period. The Court rejects this argument.  The Agreement was a negotiated arm's length transaction between sophisticated parties.  Plaintiff should have done a better job of protecting itself by getting a provision included in the Agreement that a certain portion of the sales proceeds be held in escrow during the two-year period.  Such a clause is not contained in the Agreement, and as such, the Court will not infer bad faith on the part of the Limited Partner Defendants from the fact that they received the sales proceeds.

As such, the Court finds that there is no evidence that the Limited Partner Defendants did not take the sales proceeds in good faith.  Therefore, the Court grants summary judgment in favor of the Limited Partner Defendants on this claim.

### d.  Amounts Actually Received

Next, Defendants argue that under the Uniform Fraudulent Transfers Act, Plaintiff's damages are limited to the amounts actually received by each defendant.  Defendants make this argument because it appears that Plaintiff is requesting $26,750,000 in damages for this claim. Plaintiff has not responded to this argument.

The Court agrees with Defendants on this issue. Florida Statute § 726.109(2) provides that a plaintiff's recovery cannot exceed the amount of the asset transferred to the defendant.

### 5.  Constructive Trust (Count VII)

Plaintiff asserts a claim for a declaration of a constructive trust against the Seller and the

Affiliated Companies, Jones, Hashioka, and Turk.  "'A constructive trust is one raised by equity in respect to property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it.'" Provence v. Palm Beach Tavens, Inc., 676 So. 2d 1022, 1025 (Fla. 4th DCA 1996)(quoting Quinn v. Phipps, 113 So. 419, 422 (Fla. 1927)).  In order for the Court to impose a constructive trust, Plaintiff must show: "(1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment."  Id. (citation omitted).  It is essential that a confidential relationship be established before a constructive trust will be imposed. Quinn,113 So. at 422.

Defendants argue that they are entitled to summary judgment on this claim, because Plaintiff did not have a confidential relationship with any of the defendants; instead, the sale of the Property was an arms length transaction.  See Casielles v. Taylor Rolls Royce, Inc., 645 F.2d 498, 503 (5th Cir. 1981)(finding that a confidential relationship did not exist since there was no evidence that there was anything more than an arm's length relationship).  A confidential relationship is broadly defined:

> It has been said that [a confidential relationship] exists . . . in all cases in which influence has been acquired and abused--in which confidence has been reposed and betrayed. The origin of the confidence is immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist wherever one man trusts in and relies upon another. . . . The relation and the duties involved in it need not be legal.  It may be moral, social, domestic, or merely personal.

Id. at 420-21.  However, "[i]n order for a confidential or fiduciary relationship to exist under Florida law, there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party." Lanz v. Resolution Trust Corporation, 764 F. Supp. 176, 179 (S.D. Fla. 1991)(citation omitted).  Thus,

"[t]he fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." Id. (citations omitted).

Plaintiff argues that a confidential relationship exists due to the dealings of the Seller and its Affiliated Companies with Plaintiff for over six months in order to consummate the sale of the Property. Plaintiff, however, has not cited any case law that is factually similar in order to support its argument that a confidential relationship existed. Since Plaintiff has not shown that a confidential relationship existed, its constructive trust claim fails. As such, the Court grants summary judgment in favor of Defendants on this claim.

**III.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     Plaintiff's Motion for Leave to Supplement its Opposition to Defendant's Motion for Summary Judgment (Doc. No. 173) is **DENIED.**

(2)     Defendants' Motion for Summary Judgment (Doc. No. 143) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** as to:

(a)     all claims asserted against Defendants Wilson and CNK;

(b)     Plaintiff's fraudulent inducement claim (Count I) to the extent that it is based on the alleged misrepresentation that the Property conformed to the plans and that the plans were "as built" plans;

(c)     Plaintiff's fraudulent inducement claim (Count I) to the extent that it is asserted against any defendant other than the Seller, FF Properties, LP, FF Development, Jones, Hashioka, and Turk;

     (d)     Plaintiff's breach of contract claim (Count II);

     (e)     Plaintiff's building code violation claim (Count III) as to all of the defendants except for FF Development;

     (f)     Plaintiff's architect's negligence claim (Count IV);

     (g)     Plaintiff's breach of contract claim involving CNK (Count V);

     (h)     Plaintiff's fraudulent conveyance claim (Count VI) to the extent that it is based on common law;

     (i)     Plaintiff's statutory fraudulent conveyance claim (Count VI) to the extent that it is asserted against Jones, Hashioka, and the Limited Partner Defendants; and

     (j)     Plaintiff's constructive trust claim (Count VII).

The motion is **DENIED** as to:

     (a)     Plaintiff's fraudulent inducement claim (Count I) to the extent that it is asserted against Seller, FF Properties, LP, FF Development, Jones, Hashioka, and Turk and based on (i) the representation that based on investigation and inquiry, there were no known building code violations, and (ii) the alleged active concealment of latent construction defects;

     (b)     Plaintiff's building code violation claim (Count III) to the extent that it is asserted against FF Development; and

     (c)     Plaintiff's statutory fraudulent conveyance claim (Count VI) to the extent that it is asserted against the Seller and its Affiliated Companies, and this claim is limited to amount actually received by each of these defendants.

**DONE AND ORDERED** at Tampa, Florida, this 18th day of October, 2005.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record